**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 1:18-cv-02393-RM-NRN

ABEL RAMOS AVILA,

    Plaintiff,

vs.

WILLIAM BARR, the Attorney General of the United States;
CHAD WOLF, the Acting Secretary of United States Department of Homeland Security; and
DAVID DOUGLAS, the District Director of the United States Citizenship and Immigration Services;

    Defendants.[1]

---

**ORDER**

---

This matter is before the Court on the November 22, 2019 Report and Recommendation of the United States Magistrate Judge N. Reid Neureiter ("Recommendation") (ECF No. 46), which recommends granting Defendants William Barr, Chad Wolf, and David Douglas's ("Government") Motion to Dismiss Plaintiff Abel Ramos Avila's Amended Complaint ("Motion") (ECF No. 21). Plaintiff filed an Objection to the Recommendation ("Objection") (ECF No. 49). The Government filed a Response to Mr. Ramos's Objection (ECF No. 50), and Mr. Ramos replied ("Reply") (ECF No. 51). The Recommendation and Objection are now ripe for determination.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting Secretary of Homeland Security Chad Wolf is automatically substituted for former Secretary Kevin K. McAleenan, and District Director of the Citizenship and Immigration Services David Douglas is automatically substituted for former District Director Kristi Barrows.

I. **BACKGROUND**

The Court has reviewed the Background set forth in the Recommendation and finds it accurately reflects the record. Neither party objects to the Background; therefore, the Court incorporates the same, and provides a summary.

Mr. Ramos is a Mexican citizen who applied for naturalization as a United States citizen. (ECF No. 15-1, at 4.) His application ("INS Form N-400") was denied by the United States Citizenship and Immigration Services ("USCIS") on June 26, 2017 on the ground that, despite obtaining Lawful Permanent Resident ("LPR") status in 1995, Mr. Ramos was not actually lawfully admitted for permanent residence, because had fraudulently obtained LPR status. (ECF Nos. 1, ¶ 12(e); 46, at 2.) The USCIS based its decision on the fact that Mr. Ramos failed to disclose he was deported in 1984 under a false name and that he had then been arrested in 1986 while in the United States. (*Id.*) It is unclear whether Mr. Ramos disclosed the deportation and subsequent arrest at the time he applied for LPR status, and the Government can't prove he did not.[2] (*Id.*)

In his action before this Court, Mr. Ramos petitions for de novo judicial review of his naturalization application under 8 U.S.C. § 1421(c). Upon the Government's Motion, the Magistrate Judge recommended dismissal of Mr. Ramos's Amended Complaint because his "1984 deportation rendered him inadmissible at the time of his adjustment of status" and the Government had not waived the inadmissibility issue nor did res judicata or collateral estoppel "prevent the Government from arguing Mr. Ramos was not properly admitted as a lawful permanent resident." (ECF No. 46, at 6.)

---

[2] Whether Mr. Ramos either omitted this information or made material misrepresentations during his 1995 adjustment proceeding did not form a basis for the Magistrate Judge's recommendation to grant the Government's Motion. (ECF No. 46, at 9.)

## II. LEGAL STANDARD

### A. Review of a Magistrate Judge's Report and Recommendation

Federal Rule of Civil Procedure 72(b)(3) requires the district court judge to "determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to." In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). An objection is proper if it is filed within fourteen days of the magistrate judge's recommendations and specific enough to enable the "district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *U.S. v. 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)).

### B. Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

In evaluating a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135–36 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). Conclusory allegations are insufficient. *See Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009). Instead, in the complaint, the plaintiff must allege a plausible entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A complaint warrants dismissal if it fails "*in toto* to render plaintiffs' entitlement to relief plausible." *Twombly*, 550 U.S. at 569 n.14 (italics in original). "In determining the plausibility of a claim, we look to the elements of the particular cause of action, keeping in mind that the Rule 12(b)(6) standard does not require a plaintiff to set forth a prima facie case for each element."

*Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (citation, internal quotation marks, and alteration omitted).

### III. ANALYSIS

#### A. Mr. Ramos's Objection

Mr. Ramos objects to the Magistrate Judge's Recommendation on much the same grounds he opposed the Government's Motion. Mr. Ramos argues the Magistrate Judge improperly applied the de novo standard of review under 8 U.S.C. § 1421(c). He also argues for the first time in thirty-five years – and in response to the Government's Motion – that his 1984 deportation cannot be used as a basis to deny his naturalization application because he was deprived of his due process rights. Mr. Ramos concludes by arguing the Government either waived its ability to assert Mr. Ramos fraudulently acquired LPR status or is precluded by res judicata from arguing he was not properly admitted as a lawful permanent resident.

##### *1. The Court's Authority to Review the Amended Complaint under Rule 12(b)(6)*

Though it is unclear, Mr. Ramos argues one of two positions with the following:

> "The Magistrate [Judge] ignore[d] the fundamental nature of this Court's obligation to review '*de novo*' the denial of Plaintiff's application for citizenship, to make its own findings of fact and conclusions of law, and to conduct a hearing '*de novo*' on Judicial Review of the application, which Plaintiff requests." (ECF No. 3.)

An applicant seeking review of the denial of his naturalization application may seek judicial review of the denial under a de novo standard. 8 U.S.C. § 1421(c). However, Mr. Ramos's argument is unclear as to how the Magistrate Judge failed to conduct the appropriate review. Either Mr. Ramos argues he may proceed directly to discovery and is entitled to an evidentiary hearing regardless of whether he adequately states a plausible claim for relief in his Amended Complaint or he believes that upon denial of an application for naturalization, it is sufficient to sustain his pleading burden simply to note that his application was erroneously denied.

The former position is unsupported by law and is rejected as courts routinely entertain Rule 12(b)(6) motions after a petitioner challenges the denial of a naturalization petition by the USCIS. *See* Fed. R. Civ. P. 81(a)(3) ("These rules apply to proceedings for admission to citizenship to the extent that the practice in those proceedings is not specified in federal statutes and has previously conformed to the practice in civil actions."); *Thu Ngoc Luong v. Barrows*, 17-cv-00756-KMT, 2018 WL 1242007, at *1–4 (D. Colo. Mar. 9, 2018) (granting dismissal of a complaint challenging denial of naturalization petition under Rule 12(b)(6)); *Borski v. Lynch*, No. 16-cv-00924-RM, 2017 WL1153997, (D. Colo. Mar. 27, 2017) (granting dismissal of mandamus petition under Rule 12(b)(6)); *Saliba v. Att'y Gen. of U.S.*, 828 F.3d 182 (3d Cir. 2016) (approving dismissal of 8 U.S.C. § 1421(c) complaint under Fed. R. Civ. P. 12(b)(6) where the complaint itself, as well as the materials the court could properly consider on a motion to dismiss, showed the petitioner was statutorily ineligible to naturalize); *Bidzimou v. U.S. Citizenship & Immigration Servs.*, No.13-1127-SAC, 2013 WL 4094440, at *2 (D. Kan. Aug. 13, 2013) ("the Federal Rules of Civil Procedure apply to this court's review. [. . .] Therefore, the court can dismiss the complaint[.]")

But the latter appears more conducive with Mr. Ramos's briefing when taken in light of the statement in his Reply where he contends simply "that the Plaintiff has stated a plausible claim for relief because he is statutorily eligible to naturalize as a United States citizen." (ECF No. 52, at 2–3.) However, it is clear that such a formulaic recitation alone would not satisfy his burden under Rule 12(b)(6). *See Twombly*, 550 U.S. at 570. Instead, Mr. Ramos argues some of the factual allegations in the Amended Complaint show he was granted LPR status, this status was never revoked, and the Government knew of reasons to rescind his LPR status – the same

reasons on which they relied to deny his naturalization petition – but did not, and as a result he has adequately pled a plausible claim for relief.

As correctly stated by the Magistrate Judge, the naturalization process is governed by the Immigration and Nationality Act ("INA") and its corresponding regulations. Under the relevant provisions of the INA, no person shall be naturalized unless they meet the following criteria: (1) the applicant must have been a lawful permanent resident residing within the United States for the five years immediately preceding his application; (2) the applicant must have resided continuously within the United States from the date of the application up to the time of admission to citizenship; and (3) during all the relevant time periods, the applicant must be a person of good moral character. 8 U.S.C. § 1427(a). Courts must require strict compliance with the statutory requirements. *See Fedorenko v. U.S.*, 449 U.S. 490, 506 (1981). It is the applicant's burden of showing his eligibility and compliance with the naturalization requirements, and any doubts about eligibility should be resolved in favor of the Government. *Berenyi v. Dist. Dir., I.N.S.*, 385 U.S. 630, 637 (1967); *see also* 8 C.F.R. § 316.2(b).

Mr. Ramos's application was denied because he failed to meet the first requirement under 8 U.S.C. § 1427(a). Therefore, the Court must determine whether Mr. Ramos's Amended Complaint, *in toto*, renders it at least plausible that he was a lawful permanent resident for the purposes of naturalization satisfies his burden and renders his entitlement to relief plausible. *See Twombly*, 550 U.S. at 569 n.14; 8 U.S.C. § 1427(a).

### 2. Whether the 1984 deportation is relevant or material

At the time of Mr. Ramos's 1984 deportation, the INA provided that "[a]liens who have been arrested and deported [. . .] and who seek admission within five years of the date of such deportation or removal" were inadmissible. *See* 8 U.S.C. § 1182(a)(17) (1982); (ECF No. 21-6).

And in 1995, when Mr. Ramos applied for LPR status, an individual who had been "arrested and deported" and who "[sought] admission within five years of such deportation or removal" was ineligible for admission. *See* 8 U.S.C. § 1182(a)(6)(B) (1995); (ECF No. 15-1, ¶ 14(g)(4) 5 (citing INA § 212(a)(6)(B)(i)); *see also id.* n.5). Based on the factual allegations, Mr. Ramos was deported in 1984 and arrested in 1986 for Possession of a Controlled Substance in the United States. (ECF Nos. 1, ¶¶ 9, 10, 12; 46, at 2.) Consequently, and regardless of the outcome of the arrest, it is clear that Mr. Ramos was required to remain outside the United States for five years, but returned within two.

Mr. Ramos argues that his deportation and arrest are irrelevant and immaterial with respect to his naturalization application for two reasons. Mr. Ramos argues the Magistrate Judge gave improper consideration of the 1984 deportation because it is possible that his due process rights were violated. Mr. Ramos also argues the Magistrate Judge improperly interpreted *U.S. v. Mendoza-Lopez*, 481 U.S. 828 (1987), which Mr. Ramos argues allows this Court to review his deportation order thirty-five years later.

*Mr. Ramos's due process claims.* There is no mention of possible due process violations anywhere in the Amended Complaint, and a plaintiff may not effectively amend his complaint in his response to a motion to dismiss. *See In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) ("The plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss."); *Denson v. Rios*, No. 19-cv-00233-CMA-STV, 2019 WL 7161695, at *14 n.16 (D. Colo. Dec. 23, 2019) (same).

Even if the Court entertained this argument and found it persuasive, it is not convinced it should allow Mr. Ramos a chance to further amend his complaint.[3] There is a dispute over whether Mr. Ramos could incorporate the facts surrounding his deportation to state a plausible claim for relief, because he is largely unable to remember many of the facts surrounding his deportation thirty-five years before. (*See* ECF No. 49, at 4.) Thirty-five years is simply too long to wait to challenge the procedural infirmities of a deportation order, and *Mendoza* (discussed below) does not provide the authority for this Court to do so. The Sixth Circuit has held that twenty-five years without challenging the procedural infirmities of a deportation order is "too long to wait to complain. . . ." *Palma v. I.N.S.*, 318 F.2d 645, 650 (6th Cir. 1963) (citing *Mesina v. Rosenberg*, 278 F.2d 291, 297 (9th Cir. 1960) (twenty years is too long to "not seek any review of the order of deportation or question its validity"). This Court is persuaded that Mr. Ramos should not now be able to assert this argument.

*U.S. v. Mendoza-Lopez.* Mr. Ramos's argument that he should be allowed to challenge his deportation order at any time in reliance on *Mendoza-Lopez* is unavailing. He argues that *Mendoza-Lopez* stands for the proposition that regardless of the bucket in which a type of litigation falls (i.e., civil or criminal), a deportation order should not form the basis of *any adverse action* without meaningful judicial review. (ECF No. 4–5.) However, this reading is plainly wrong.

In *Mendoza-Lopez*, the Supreme Court addressed the issue of "whether an alien who is prosecuted under 8 U.S.C. § 1326 for illegal entry following deportation may assert in that criminal proceeding the invalidity of the underlying deportation order." *Mendoza-Lopez*, 481

---

[3] Though Mr. Ramos didn't request the ability to further amend his Amended Complaint – his Response to the Government's Motion and the Magistrate Judge's Objection focus exclusively on denying the Motion – the Magistrate Judge considered the possibility and recommended denying Mr. Ramos the opportunity to amend. (ECF No. 46, at 8.)

U.S. at 830. Respondents were two Mexican nationals who were arrested in separate locations in Lincoln, Nebraska on October 23, 1984. *Id.* They were subsequently transported to Denver, Colorado where a deportation hearing was held for them along with eleven other persons, and respondents were ordered deported. *Id.* After the deportation hearing, respondents were bused to El Paso, Texas and deported therefrom on November 1984. *Id.* Each was advised, by Form I–294, that return to the United States without permission following deportation would constitute a felony. *Id.* Form I–294 was both in English and in Spanish. *Id.*

Respondents were again arrested in December 1984 in separate locations in Lincoln, Nebraska and were indicted for violating 8 U.S.C. § 1326. *Mendoza-Lopez*, 481 U.S. at 830. Respondents moved to dismiss their indictments on the grounds they were denied fundamentally fair deportation hearings. *Id.* at 831. At the time, there was a split among circuits whether a defendant prosecuted under § 1326 may collaterally attack a deportation order. *Id.* at 832 (citing *U.S. v. Mendoza-Lopez*, 781 F.2d 111, 112 (8th Cir. 1985)). The Supreme Court held that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a *criminal* sanction, there must be *some* meaningful review of the administrative proceeding." *Mendoza-Lopez*, 481 U.S. at 837–38 (partial emphasis in original) (collecting cases). Notably, the Supreme Court stated:

> Depriving an alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a *criminal offense*.

*Id.* at 839 (emphasis added). In a footnote, the Supreme Court limited its holding, stating, "We note parenthetically that permitting collateral challenge to the validity of deportation orders in proceedings under § 1326 does not create an opportunity for aliens to delay deportation, since the

collateral challenge we recognize is available *only* in criminal proceedings instituted after reentry." *Id.* at 839 n.17 (emphasis added).

In short, the Supreme Court explicitly held that a deportation order may be collaterally challenged only if the prior deportation order forms the basis for a subsequent criminal proceeding. The question here is not whether Mr. Ramos should be allowed now to collaterally attack the 1984 deportation on due process grounds because he is facing criminal charges[4] – the Government is not pursuing any criminal charges against Mr. Ramos, nor has the Government brought any charges against Mr. Ramos under § 1326. Instead, Mr. Ramos applied for naturalization – a civil matter – which was denied because he was present in the United States within five years of his deportation as evidenced by his arrest in the United States. While the cases cited by Mr. Ramos may accurately reflect the sobering responsibility the law owes to aliens so as to not deprive them of "both property and life or of all that makes a life worth living" without due process of law, his reliance on *Mendoza-Lopez* is misplaced and his interpretation flawed. (ECF No. 49 at 5 (citing *Carlson v. Landon*, 342 U.S. 524, 537–38 (1952) and *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922)).) Mr. Ramos's argument asks this Court to extend *Mendoza-Lopez* beyond the Supreme Court's explicit limitation. This Court is unable to do so.

Consequently, Mr. Ramos may not now challenge his 1984 deportation on due process grounds within the context of this denial of his naturalization application. Ultimately, Mr. Ramos's Amended Complaint is self-defeating, specifically, the Amended Complaint admits that Mr. Ramos was deported in 1984, was required to remain outside the United States for five years

---

[4] The Court expresses no opinion on whether Mr. Ramos's 1984 deportation allegedly violated his due process rights. The Court does note that Mr. Ramos argues he was deported as a result of a mass deportation hearing without the aid of a Spanish interpreter though eh could not read, write, or understand English. (ECF No. 49, at 4.) Accordingly, he argues he was not informed of his right to contest his deportation, the right to counsel, the right to appeal a deportation order, or the right to bond. (*Id.*)

(until 1989), and was arrested 1986. Mr. Ramos's admissions show that he was inadmissible for LPR status under INA § 212(a)(9)(A)(i) at the time of his 1995 adjustment proceeding. The Court declines to extend *Mendoza-Lopez*'s holding beyond purely criminal proceedings; therefore, the Court holds that not only has Mr. Ramos failed to state a plausible claim for relief but also allowing any further amendments would be futile.

### 3. *Waiver and res judicata*

Finally, Mr. Ramos argues the Government cannot now use these same facts to deny his naturalization application where it had previously instituted rescission proceedings which the Government eventually consented to drop. (ECF No. 49, at 6.) Mr. Ramos argues that the Government's failure to fully prosecute the initial rescission proceedings in the early-2000s effectively waived their ability to reassert those same issues to deny Mr. Ramos citizenship. (*Id.*) Alternatively, he argues that the Government is estopped or precluded from opposing Mr. Ramos's naturalization petition on the foregoing grounds, because the same factual and legal issues (i.e., the recission of Mr. Ramos's LPR status) were raised, or could have been raised, and decided. (*Id.* at 6–11.)

*Waiver.* Mr. Ramos argues that the Government's decision to terminate rescission proceedings amounts to an effective waiver of "inadmissibility based upon the prior deportation in 1984, defacto [sic]." (ECF No. 49, at 6.) Like in his briefing before the Magistrate Judge, he provides no legal basis for this inferred or implied waiver. (*Id.*; *see also* ECF Nos. 31, at 14; 46, at 10). The Court recognizes that the term "waiver," as used in the record, is a term of art used two different ways. The first is Mr. Ramos's position that the Government has waived the argument. The second is the Government's use – also used by the Magistrate Judge – as a waiver of inadmissibility. These waivers are conceptually different, but in this circumstance, they are

functional equivalents. Mr. Ramos does not cite to any authority to support his argument regarding either use.

The INA itself doesn't provide for an implied or de facto waiver of inadmissibility. It does state, however, a waiver may be applied for, and "the formal waiver process is the sole method for an otherwise inadmissible applicant [. . .] to obtain admissibility." *Saliba*, 828 F.3d at 194 (quoting 8 C.F.R. § 245.1(f)). But even the waiver process comes with its own requirements. *See Fernandez v. Ashcroft*, 394 F.3d 881, 885 (10th Cir. 2005). In any event, while Mr. Ramos may have applied for waiver (*see* ECF No. 15-1, ¶ 14(c)(1)), he does not allege that he was ever granted a waiver of inadmissibility under 8 U.S.C. § 1182(i)(1). Mr. Ramos has not provided any legal authority for how this Court could ignore statutory language and provide an additional avenue for waiver of inadmissibility despite clear indication to the contrary. The Court refuses to create an implied or de facto waiver mechanism. The Court also concludes the Government's decision to terminate the rescission proceedings did not impliedly grant a waiver of either the Government's specific arguments or Mr. Ramos's inadmissibility.

*Res judicata.* "The doctrine of res judicata, or claim preclusion, will prevent a party from litigating a legal claim that was or could have been the subject of a previously issued final judgment." *Lenox MacLaren Surgical Corp. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017) (internal quotations omitted) (quoting *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005)). "The principle underlying the rule of claim preclusion is that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not have another chance to do so." *Id.* (internal quotations omitted) (quoting *Stone v. Dep't of Aviation*, 453 F.3d 1271, 1275 (10th Cir. 2006)). To apply claim preclusion, "three elements must exist: (1) a [final] judgment *on the merits* in an earlier action; (2) identity of parties or privies in the two suits; and

(3) identity of the cause of action in both suits." *Id.* (internal quotations omitted) (emphasis added) (quoting *King v. Union Oil Co. of Cal.*, 117 F.3d 443, 445 (10th Cir. 1997)).

While it was unclear upon which legal theory Mr. Ramos relies in his Objection (i.e., issue or claim preclusion), he refers to Black's Law Dictionary, "the most authoritative legal dictionary," (*U.S. v. Thomas*, 939 F.3d 1121, 1123 (10th Cir. 2019)), for a definition of res judicata. (ECF No. 49, at 7.) Without identifying the specific elements he's required to show, and providing an ill-advised number of lengthy block quotes, Mr. Ramos outlines the purpose of res judicata. (ECF No. 49, at 7–8.) The Court therefore concludes Mr. Ramos is arguing res judicata applies. (*See* ECF No. 49, at 7 (quoting *Cromwell v. County of Sac.*, 94 U.S. 351, 352 (1876)).)

Mr. Ramos argues that the rescission case brought by the Government involved the same parties, involved the same facts, and raised the same legal justifications for seeking rescission. (ECF No. 49, at 8.) According to Mr. Ramos, the Government brought proceedings to rescind his LPR status because he was inadmissible under specific sections of the INA: (1) INA § 212(a)(9)(A)(i) because of a prior deportation; (2) INA § 212(a)(2)(A)(i)(II) because of a prior arrest for Possession of Controlled Substance; and (3) INA § 212(a)(6)(C)(i) because Mr. Ramos willfully withheld information regarding his deportation and arrest resulting in a willful misrepresentation of material facts. (ECF No. 49, at 6.) The Government consented to terminate the rescission action if Mr. Ramos provided proof that no charges were filed as a result of his 1986 arrest. (*Id.*) The Government moved to terminate the proceedings on June 30, 2003, because Mr. Ramos had provided the requested proof. (*Id.*) Consequently, Mr. Ramos argues the Government cannot now use any of those three arguments as a basis to deny his naturalization application because those same claims formed the argument that he was inadmissible for LPR status back in 2003.

However, Mr. Ramos's argument fails, because he assumes a final judgment on the merits. (ECF No. 49, at 10 (quoting *U.S. v. Utah Construction & Mining Co.*, 384 U.S. 394, 422 (1966)) ("When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce [repose].")) The Supreme Court has held that, "[i]n most circumstances, it is recognized that consent agreements ordinarily are intended to preclude any further litigation on the claim presented but are not intended to preclude further litigation on any of the issues presented." *Ariz. v. Cal.*, 530 U.S. 392, 414 (2000) (internal quotations omitted) (quoting 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4443, pp. 384–85 (1981)). This is grounded on the fundamental principle of the res judicata doctrine that preclusion only attaches:

> when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment. In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section [describing issues preclusion's domain] does not apply with respect to any issues in a subsequent action.

*Id.* (internal citations and quotation marks omitted) (quoting Restatement (Second) of Judgments § 27, p. 250 (1982); *Id.*, comment *e*, at 257). Unless a showing that the judgment entered with consent of the parties involved a determination of questions of fact and law by the court – the administrative agency, in this case – "the judgment has no greater dignity, so far as collateral estoppel is concerned, than any judgment entered only as a compromise of the parties." *Ariz.*, 530 U.S. at 415–16 (internal quotation marks omitted) (quoting *U.S. v. Int'l Building Co.*, 345 U.S. 502, 506 (1953)).[5] The same holds true for voluntary termination of proceedings. *See, e.g.*,

---

[5] Regardless of which theory Mr. Ramos chose to adopt, both issue and claim preclusion require a judgment on the merits. *See Burrell v. Armijo*, 456 F.3d 1159, 1172 (10th Cir. 2006) (emphasis added) (internal quotation marks omitted) ((1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated *on the merits*, (3) the party against whom the doctrine is

*U.S. Foodservice, Inc. v. Shamrock Foods Co.*, 246 Fed. App'x 570, 580 (10th Cir. 2007) ("Shamrock's voluntary dismissal of its counterclaim was without prejudice, which is not an adjudication on the merits."); *Cubie v. Bryn Career Coll., Inc.*, 244 F. Supp. 2d 1191, 1201 (D. Kan. 2003) (same).

Therefore, it is Mr. Ramos's burden to establish the agreement between him and the Government involved "determination[s] of questions of fact and law by the court." *See Ariz.*, 530 U.S. at 415–16. Mr. Ramos has failed to carry his burden and, consequently, he has not satisfied the first element of res judicata. Therefore, the Government's dismissal of the rescission proceedings cannot form the basis for preclusion.

Even if Mr. Ramos could establish the Government's termination of the rescission proceedings acted as an adjudication on the merits, Mr. Ramos fails to address how the identity of the cases are the same. For example, the Government argues other circuits have explicitly recognized that "rescission [. . .] and naturalization raise 'entirely distinct legal issues.'" (ECF No. 50, at 13 (quoting *Saliba*, 828 F.3d at 196)); *see also Cervantes v. Atkinson*, No. 14-CV-24553-GAYLES, 2015 WL 6504599, at *2–3 (S.D. Fla. Oct. 28, 2015) (raised and dropped exclusion proceedings brought on basis that plaintiff was inadmissible because of fraud did not preclude inadmissibility finding during naturalization because "the right and duties for [p]laintiff's exclusion proceeding are different from those in his naturalization proceeding" and therefore did not involve the same cause of action). Mr. Ramos responds simply stating "they are both regarding whether Mr. Ramos was lawfully admitted as a Lawful Permanent Resident." (ECF No. 51, at 6.) However, this oversimplifies the issue.

---

invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action).

Mr. Ramos relies primarily on *Medina v. I.N.S.*, 993 F.2d 499 (5th Cir. 1993). *Medina*, however, is factually distinguishable. The matter before this Court does not involve a deportation hearing – it involves denial of a naturalization application. *See Medina*, 993 F.2d at 501. While the denial of his naturalization application necessarily relied on an allegedly improper grant of LPR status – the same issue on which the rescission proceedings addressed – the Government is not seeking to rescind Mr. Ramos's LPR status,[6] but to determine whether he is entitled to be naturalized for citizenship. Mr. Ramos seems to argue that the Government's denial of his naturalization petition is effectively a rescission of his LPR status and that sustaining the denial would necessarily lead to deportation. However, Mr. Ramos provides no legal authority for this position nor does the Government ask for reconsideration of either his LPR status or deportation. Consequently, even if the agreement to terminate the rescission proceeding acted as a final judgment on the merits, rescission proceedings and naturalization proceedings are separate and distinct for the purposes of res judicata. Therefore, the Government is not precluded from using those same arguments for denying Mr. Ramos's naturalization application because the third element of res judicata – identity of the cause of action in both suits – is not satisfied either. *See Lenox*, 847 F.3d at 1239.

## IV. CONCLUSION

Based on the foregoing and a *de novo* review of the portions of the Recommendation to which Mr. Ramos objected, the Court:

(1) OVERRULES Mr. Ramos's Objection to the Recommendation (ECF No. 49);

(2) AFFIRMS and ADOPTS the Magistrate Judge's Recommendation (ECF No. 46);

---

[6] The Court makes no finding regarding whether Mr. Ramos was improperly granted LPR status, and nothing herein should be read to support such a finding even if it could now be challenged – an issue on which this Court also does not express an opinion.

(3) GRANTS the Government's Motion to Dismiss Amended Complaint (ECF No. 21) with PREJUDICE; and

(4) ORDERS the Clerk to enter JUDGMENT in favor of DEFENDANTS and close this case.

DATED this 27th day of May, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge